UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRAVIS GOLDEN,

    Plaintiff,

vs.

OHIO DEPT. OF REHAB
AND CORR., *et al.*,

    Defendants.

Civil Action No. 2:22-cv-2125

Morrison, J.
Bowman, M.J

## REPORT AND RECOMMENDATION

This matter is now before the Court on the parties' cross motions for summary judgment. (Docs. 47, 48) and the parties' responsive memoranda (Docs. 50, 55, 56)

**I. Background and Facts**

On May 9, 2022, Plaintiff, a prisoner currently incarcerated at the Ross Correctional Institution, initiated this action by filing a pro se civil rights complaint in this Court pursuant to 42 U.S.C. § 1983 against the Ohio Department of Rehabilitation and Correction and Sergeant Marshall.[1] Defendant Sergeant Tony Marshall, is an employee of the Pickaway Correctional Institution ("PCI") within the Ohio Department of Rehabilitation and Correction ("ODRC"). Plaintiff's complaint alleges that Sgt. Marshall violated his right to privacy and his rights under the Eighth Amendment. (Doc. 3 at 5). Specifically, Plaintiff claims that Marshall ordered a strip search of those in his entire dorm in retaliation for another inmate calling him a name.

Thereafter, Plaintiff filed a motion for summary judgment asserting that Defendant

---

[1] Upon initial screening of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), Plaintiff's claims against Defendant ODRC were dismissed for failure to state a claim upon which relief may be granted. (See Doc. 7).

Marshall did not have a penological justification for a group strip search, and Sgt. Marshall's actions did not comport with the overall purpose of the Prison Rape Elimination Act of 2003 (PREA) (Doc. 47). As such, he alleges that Defendant Marshall's actions violated his rights under the Fourth and Eighth Amendments.

Defendant Marshall then filed his own motion for summary judgment asserting that the event in question was a tattoo check, was done to accomplish valid penological objectives, and that Plaintiff has failed to establish that his constitutional rights were violated. Defendant Marshall also asserts that he is entitled to qualified immunity. In support of his motion for summary judgment, Defendant Marshall attaches his affidavit, as well as the affidavits of Fatai Ayool, Marilyn Coffey, and Mary Rouch. (See Doc. 48, Exs. A-D; Doc. 50, Ex. A).

Defendant's motion for summary judgment establishes the following facts[2]:

PCI managerial personnel encourage the staff to conduct randomized searches, specifically "tattoo checks." (Doc. 48. Ex. A ¶ 8). Generally, these checks are done at least monthly, but usually much more often. (Def. Ex. A ¶ 8d). There are several vital penological objectives that necessitate these searches. First, PCI is rife with prison gangs, which presents a major security threat to inmate and staff safety. (Doc. 48, Ex. A ¶ 8a). The term Security Threat Group ("STG") is used to include prohibited prison associations that pose a serious threat to the safety and security of the institution. Id. Membership in STGs is prohibited. Id. These groups regularly engage in violent and criminal activity, which can compromise institutional security. Id. The groups have symbols or insignia to indicate membership, and they regularly will administer tattoos of

---

[2] Plaintiff failed to cite to any evidence, affidavits or otherwise, in this motion for summary judgment as required by Fed. R. Civ. P. 56.

2

those symbols on new members. Id. Tattoo checks enable staff to identify STG members so they can prevent dangerous and illegal activity.

Second, there is a health and safety concern inherent in the application of prison tattoos. (Doc. 48, Ex. A ¶ 8b). Both the administration of tattoos and the possession of instruments to administer tattoos are prohibited by the inmate rules of conduct. Ohio Rev. Code 5120-9-06 (70) and (71). This results in inmates using other material (not designed to safely puncture and imprint on skin) to tattoo each other and inmates use unsterile, makeshift items with needle points to imprint their tattoos. Id. This has led to the predictable spread of diseases within ODRC institutions, including PCI. Id. PCI, in particular, had an outbreak of Methicillinresistant Staphylococcus Aureus (MRSA) infections cause by use of makeshift tattoo needles. Id.

It is part of Sgt. Marshall's official duties to conduct or oversee tattoo checks. See Doc. 48 Ex. A, ¶ 8d. He also must complete a count of all inmates at their bedside, for prison security purposes. Id. PCI bays, including D2 6 Bay block, may have as many as fifty (50) inmates. Id. Completing the two tasks while searching every inmate in the bathroom separately would take a considerable amount of time; completing the two tasks contemporaneously is the only efficient way to achieve both tasks effectively. Id. If an inmate requested a private search in the bathroom, Sgt. Marshall and his team would have obliged without question, but it would delay other critical security tasks he was required to accomplish. Id.

On May 15, 2020, Defendant Marshall entered 6 Bay and verbally announced the staff would be conducting a tattoo check of all inmates by quickly inspecting their thighs, chest, and back. (Doc. 48, Ex. A, ¶ 6). This check was being conducted simultaneously

3

with their inmate count. Id. at ¶ 6e. Inmates stood next to their bed for the count, and were quickly checked for tattoos at the same time. Id. Sgt. Marshall loudly announced that if an inmate wanted to be searched privately, that search would be conducted in the bathroom. Id. at ¶ 6b and 6c. No females were present for the search. Id. Ex. B, ¶ 3, 4.

The tattoo check itself is less than thirty (30) seconds.  According to Marshall, the inmate lifts the front of his shirt and then back, so that the officer can visually verify there are no tattoo markings. Id. at ¶ 6d. The inmate then pulls up his trouser leg so that the officer can visually verify there are no tattoo markings on the thigh. Id. at ¶ 6c. The officer then moves onto the next inmate. Id. at ¶ 6c and 6d.

If an inmate was not wearing underwear, he would automatically be searched in the bathroom. Id. Sgt. Marshall did not ask inmates to disrobe to their underwear. Id. Plaintiff did not verbally elect to be searched in the bathroom. Def. Ex. A at ¶ 7. Sgt. Marshall knew the Plaintiff because he had a reputation of being a persistent rule violator. Id. at ¶ 9.

Sgt. Marshall cannot recall anything notable about the search of Plaintiff, being one of fifty, but it would have been notable if Plaintiff verbally elected to be searched in the bathroom. Id. at ¶ 4. Plaintiff did not. Id. at ¶ 7. Plaintiff also did not experience a physical injury as a result of the search. (See Def. Ex. D, Declaration of Administrator Roush, ¶ 4).

**II. Analysis**

**A.  Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the

4

movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. Id. at 252.

As Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). However, his status as a pro se litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion. *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App's 482, 485 (6th Cir. 2010)). He has failed to meet that burden.

**B. Defendant Marshall's Motion for Summary Judgment is Well-taken.**

Section 1983 provides a civil cause of action for persons deprived of any rights

5

guaranteed by the Constitution or federal laws by those acting under color of state law. *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). To bring claims under 42 U.S.C. § 1983, a Plaintiff must plead "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).  Here, Plaintiff claims the tattoo check performed by Defendant Marshall violated his right to privacy as well as his rights under the Eighth Amendment prohibiting cruel and unusual punishment.

1. *Plaintiff's Fourth Amendment Claim fails as a matter of law*

The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. However, in a prison environment, an inmate's right to privacy is greatly diminished because prison officials must be afforded discretion on how they ensure the safety of inmates, staff, and the general public. *Wilkinson v. Austin*, 545 U.S. 209, 227 (2005). Thus, to satisfy Fourth Amendment concerns, searches "must be conducted in a reasonable manner." *Bell v. Wolfish*, 441 U.S. 520, 560 (1979). *McKinney v. Paddock*, No. 2:20-CV-1450, 2022 WL 2790633, at *8 (S.D. Ohio July 15, 2022)

A strip search is "an extreme intrusion upon personal privacy," and "the act of a stranger examining the most private areas of one's body is an offense to the dignity of the individual that is undoubtedly humiliating and deeply offensive to many." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 483 (6th Cir. 2017)

To determine whether a strip search of an inmate is constitutional, courts must "balance the nature of the intrusion against the need for the particular search, though in

6

the corrections setting we afford deference in favor of correctional officials' penological expertise and interests." *Id.* at 480. Courts weigh three elements: (1) "the scope, manner, and location of the search"; (2) "the need for the search, giving due deference to the correctional officer's exercise of her discretionary functions"; and (3) "whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion." *Id.* at 482.

Applying these factors, the evidence clearly shows that the tattoo search in question was not unconstitutionally intrusive. First, Defendant Marshall verbally announced the staff would be conducting a tattoo check of all inmates by quickly inspecting their thighs, chest, and back. (Doc. 48. Ex. A, ¶ 6). Inmates were asked to remove layers down to their shorts, to check their thighs. Id. at ¶ 6b and ¶ 6c. They were not asked to strip naked. The tattoo check itself was less than thirty (30) seconds and if an inmate wanted to be searched privately, that search would be conducted in the bathroom. Id. at ¶ 6b and 6c. Notably, Plaintiff does not allege or provide any evidence that he was forced to strip to his underwear. In fact, Plaintiff does not provide any evidence that he was actually searched.

Next, Defendant Marshall has provided a reasonable explanation for the tattoo searches. See *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 573 (6th Cir. 2013) (Absent proof to the contrary, we must assume that a search of a prisoner is initiated in an effort to detect and deter contraband). Namely, the tattoo checks help the officers to identify prison gang members and it also promotes the health and safety of the inmates. In this regard, Defendant Marshall provided evidence explaining that the use of unsterile, makeshift prison tattoo instruments has caused the spread of diseases, including MRSA.

7

(Doc. 48, Ex. A, ¶ 8a, 8b).

Last, as noted by Defendant Marshall, Plaintiff's privacy was minimally invaded. As detailed above, the security count and the tattoo search of each inmate was done at the same time and took mere seconds for the purposes of combatting prison gangs and preventing disease among inmates. For purposes of the tattoo check, the inmates were only asked to remove layers down to their shorts and were not asked to strip naked. The Sixth Circuit has found that group searches were the most expedient option, and this was justified by "not only the need to find contraband but to identify medical issues." *Williams v. City of Cleveland* 907 F.3d 924, 936 (6th Cir. 2018).

Notably, Plaintiff claims that there was no legitimate penological need for the group searches, but he fails to address the justification put forward by defendants. In response to defendants' motion for summary judgment, Plaintiff presented no evidence to dispute their asserted penological justification but only asserted that there is video footage of the search contradicting Defendants' version of events.  (Doc. 55 at 3-5).  However, Plaintiff has not produced the video.  To the contrary, Defendant Marshall's affidavit states that he inquired about security camara footage for the date in question and none was available. (Doc. 49, Ex. 1, Marshall, Aff. ¶ 4).

In opposing Defendant's properly supported motion for summary judgment, plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F.Supp.2d 846, 849 (S.D. Ohio 2011). He "cannot rest on the mere allegations of the pleadings." *Id. See* also *Maston*, 832 F.Supp.2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in

8

unsworn filings when opposing a motion for summary judgment). *Johnson v. Dillow*, No. 1:16-CV-503, 2019 WL 110982, at *3 (S.D. Ohio Jan. 4, 2019), *report and recommendation adopted,* No. 1:16-CV-503, 2019 WL 977885 (S.D. Ohio Feb. 28, 2019).

In light of the foregoing, the undersigned finds that no fact issues remain, and Defendant is entitled to judgment as a matter of law with respect to Plaintiff's invasion of privacy claim under the Fourth Amendment.

*2. Eighth Amendment*

Plaintiff also claims that the tattoo check was meant as a punishment and therefore violated his rights Eighth Amendment rights. Plaintiff's contention is unavailing.

The Eighth Amendment protects against the infliction of "cruel and unusual punishments" that involve "the unnecessary and wanton infliction of pain." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). That protection extends to punishments that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (cleaned up).

To prove an Eighth Amendment claim, a plaintiff must show objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious," and the subjective component requires that the involved prison official had a "sufficiently culpable state of mind." *Id.* (cleaned up). In evaluating whether a strip search violates the Eighth Amendment, the "principal inquiry" is whether the search served a legitimate purpose or was performed "maliciously and sadistically to cause harm." *Fugate v. Erdos*, No. 21-4025, 2022 WL 3536295, at *13 (6th Cir. Aug. 18, 2022).

Plaintiff claims that Marshall ordered a strip search of his entire dorm in retaliation

for another inmate calling Marshall a derogatory name. (See Doc. 3 at 5). However, Plaintiff offers no evidence in support of his assertions. As such, Plaintiff's unsupported conclusory allegations fail to establish that Defendant's actions were punitive in nature and not a routine security and safety task. To the contrary, as detailed above, the evidence clearly establishes that the search served a legitimate purpose and was not punitive, namely, in order to identify prison gangs and for the health and safety of inmates. (Doc. 48, Def. Ex. A, ¶ 8a and 8b. PCI policy further shows that such searches are permitted for security purposes. (Doc. 48, Ex. C2).

Accordingly, Plaintiff has failed to establish any Eighth Amendment violation and summary judgment is proper on Plaintiff Eighth Amendment claims. [3]

*3. Qualified Immunity*

In the alternative, assuming Plaintiff has met his burden of establishing a Fourth or Eighth Amendment, which he has not, Defendant Marshall also argues that he is entitled to qualified immunity.

The purpose of qualified immunity is to provide governmental officials with the

---

[3] Plaintiff argues that Defendant Marshall did not have a penological justification for a group strip search, and therefore Sgt. Marshall's actions did not comport with the overall purpose of the Prison Rape Elimination Act of 2003 (PREA). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue." *Montgomery v. Harper*, No. 5:14-cv-P38-R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) (quoting *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294 (D.Vt. Aug. 12, 2008) and citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280, (2002)). It "does not grant prisoners any specific rights." *Montgomery*, 2014 WL 4104163, at *2. More specifically, "PREA does not create a private right of action" for prisoners. *Perry v. Warden Warren Corr. Inst.*, No. 1:20-cv-30, 2020 WL 3396317, at *6 (S.D. Ohio June 19, 2020), *report and recommendation adopted*, 2020 WL 4013038 (S.D. Ohio July 16, 2020); *Johnson v. Gowdy*, No. 24-10385, 2024 WL 1446579, at *3 (E.D. Mich. Apr. 3, 2024) (and the cases cited therein) (noting that numerous district courts in this Circuit hold that PREA does not create a private cause of action). As a result, "[a]n alleged PREA violation, or a failure to adequately investigate an alleged PREA violation may not be raised under 42 U.S.C. § 1983." *Johnson v. Chambers-Smith*, No. 2:22-cv-4179, 2023 WL 2555446, at *21 (S.D. Ohio Mar. 17, 2023), *report and recommendation adopted*, 2023 WL 6065130 (S.D. Ohio Sept. 18, 2023). Courts regularly dismiss such claims, even where the facts of a case may raise valid concerns. *Id.* Accordingly, to the extent Plaintiff is asserting a claim against Defendant Marshall under the PREA, such a claim should be dismissed.

ability to "reasonably anticipate when their conduct may give rise to liability for damages." *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012 (1984). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). Once a defendant has raised the defense of qualified immunity, the plaintiff bears the burden of proof to show that the defendant is not entitled to that defense. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

Here, as noted above, Plaintiff has failed to establish a violation of his constitutional rights. Furthermore, the actions taken by Defendant Marshall would not constitute a violation of a "clearly established" right for the purposes of qualified immunity because Defendant Marshall acted reasonably, and the search was "reasonably related to legitimate penological interests." *See Fugate v. Erdos*, 2022 U.S. App. LEXIS 23208 *12, 2022 WL 3536295 (6th Cir. 2022).

As such, even if Plaintiff had shown a constitutional violation, the undersigned finds that Defendant would be immune from Plaintiff's claim against him and would therefore be entitled to judgment as a matter of law.

### III. Conclusion

In light of the foregoing, it is herein **RECOMMENDED** that: (1) Plaintiff's motion for

11

Summary Judgment (Doc.47) be **DENIED**; (2) Defendants motion for summary judgment be **GRANTED** (Doc. 48); (3) the remaining pending motions (Docs. 57, 58, 59) be **DENIED as MOOT**; and (4) and this matter be **CLOSED**.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge